IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WILLIAM A. ROUSE, II,**<br>**#M20873,** | |
| **Plaintiff,** | |
| **v.** | **Cause No. 3:20-cv-00175-GCS** |
| **DR. PITTMAN,**<br>**ROB JEFFRIES,**<br>**ALYSSA WILLIAMS,**<br>**STEVE MEEKS,**<br>**JOHN/JANE DOE 1,** *IDOC Medical*<br>*Director,*<br>**JOHN/JANE DOE 2,** *Regional Medical*<br>*Coordinator,*<br>**DEE DEE BROOKHART,**<br>**JOHN/JANE DOE 3,** *IDOC Assistant*<br>*Warden of Programs,*<br>**LAURIE CUNNINGHAM,**<br>**JOHN/JANE DOE 4,** *Director of Nursing,*<br>**WEXFORD HEALTH SERVICES, INC.,**<br>**KEN DOVER,**<br>**THOMAS LEHMAN,**<br>**JOHN/JANE DOE 5,** *Wexford Regional*<br>*Medical Director,* **and**<br>**JOHN/JANE DOE 6,** *Wexford Institution*<br>*Medical Director,* | |
| **Defendants.** | |

## <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

Plaintiff William Rouse, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. He claims that he received inadequate medical care after injuring his head during a pick-up

basketball game. He seeks monetary damages and declaratory relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

THE COMPLAINT

Rouse alleges that on Friday, March 29, 2019, while playing basketball at Lawrence, he was injured when he "smacked heads with another inmate." (Doc. 1, p. 3). "The impact 'knocked him out on his feet' and opened up a laceration over his left eye." *Id.* He was taken to the health care unit, where a nurse determined that he needed stiches. The nurse left the room to inform the doctor. After Dr. Pittman evaluated the injury, she also determined that Rouse needed stiches but stated, "I'm not doing this today." Dr. Pittman directed the nurse to put a butterfly bandage on the wound and have Rouse come back Monday. The nurse told Rouse that the butterfly bandages would not work well because he was still sweating but applied the bandages. Rouse asked the nurse for extra band aides to take back to the housing unit because the wound continued to bleed. The

---

[1]     The Court has jurisdiction to screen the Complaint in light of Rouse's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

nurse provided him with extra band aides and acetaminophen. *Id.* The nurse instructed Rouse to tell a correctional officer if the wound opened back up, if the bleeding did not stop, or if he experienced migraines, vomiting, or dizziness. *Id.* at p. 4.

Rouse returned to the housing unit, and about forty-five minutes later, he informed a sergeant that his wound would not stop bleeding and that he needed to go to the health care unit. (Doc. 1, p. 4). Rouse returned to the health care unit and was evaluated by another nurse who stated that he needed stitches "right now." Rouse was taken to Richland Memorial Hospital. At the hospital, (1) he received a tetanus shot; (2) vitals were checked; (3) the wound was irrigated and cleaned; (4) epinephrine was administered to stop the bleeding; (5) concussion protocol was performed; and (6) he received stiches, a compression wrap, and an ice pack. *Id.*

Rouse returned to the housing unit at Lawrence without ice and was not issued an ice permit. (Doc. 1, p. 5). The next day he woke up with a throbbing headache and mild nausea. Throughout the morning the headache intensified and by the afternoon he was having double-vision and feeling dizzy and nauseated. He informed the sergeant of his symptoms and was taken to the health care unit. Rouse told the nurse that he was experiencing concussion symptoms. In an effort to dissuade Rouse from being seen, the nurse told Rouse that they could not do anything for him but that the doctor may place him under observation until Monday. Rouse said "okay," and he was taken to an exam room. *Id.* After a quick examination, the nurse gave Rouse a blister pack of ibuprofen and told him that the doctor scheduled him for a follow up appointment on Monday morning and that he was to return to the housing unit. *Id.* at p. 6.

On Monday morning, April 1, 2019, during his appointment with Dr. Pittman, she told him "sorry for running out on you on Friday, I had to get my daughter to the airport." Rouse told Dr. Pittman that he had a throbbing headache and nausea, and he requested additional pain medication because he was out of the ibuprofen and acetaminophen he had previously been given. (Doc. 1, p. 6). Dr. Pittman ordered a CT scan and issued a permit for ice. Rouse was not given any pain medication.

From Wednesday until Saturday, Rouse continued to experience mild nausea and headaches. He saw Dr. Pittman on April 8, 2019, to have his stiches removed. He told Dr. Pittman he was still experiencing headaches and nausea and requested pain medication. Dr. Pittman told Rouse she would follow up with the CT results. He continued to have mild headaches and nausea until April 12, 2019. He was never called back to the health care unit to go over the CT results with Dr. Pittman. (Doc. 1, p. 6).

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:**     Eighth Amendment deliberate indifference claim against Dr. Pittman for failing to treat Rouse's head injury timely and adequately.

**Count 2:**     Eighth Amendment deliberate indifference claim against Jeffries, Williams, Meeks, John/Jane Doe 1, John/Jane Doe 2, Brookhart, John/Jane Doe 3, Cunningham, John/Jane Doe 4, Wexford Health Services, Inc., Dover, Lehman, John/Jane Doe 5, and John/Jane Doe 6 for policies and practices that resulted in untimely and inadequate treatment of Rouse's head injury.

The parties and the Court will use this designation in all future pleadings and orders,

unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]**

To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)(citations and quotation marks omitted). At this stage, Rouse states a viable deliberate indifference claim against Dr. Pittman. He asserts that his injury was sever enough that he required stiches and was taken to an outside hospital for treatment. Furthermore, Dr. Pittman was aware of his injury and that he needed stiches, yet decided to delay treatment for three days so that she could run a personal errand. Therefore, Count 1 will proceed. *See DaSilva v. Rymarkiewicz,* No. 16-1231, 776 Fed. Appx. 350, 353 (7th Cir. July 18, 2019)(citing *Wilson v. Adams,* 901 F. 3d 816, 820 (7th Cir. 2018).

Count 2, however, will be dismissed. Rouse alleges that Defendants Jeffries, Williams, Meeks, John/Jane Doe 1, John/Jane Doe 2, Brookhart, John/Jane Doe 3, Cunningham, John/Jane Doe 4, Wexford Health Services, Inc., Dover, Lehman, John/Jane Doe 5, and John/Jane Doe 6 "are responsible for creating a culture that lacks accountability, which enabled Dr. Pittman to violate [his] constitutional rights." (Doc. 1, p. 7). He further claims that these Defendants have policies and practices that include: (1)

---

[2]      *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

chronic understaffing; (2) inadequate record keeping practices; (3) inadequate follow up and follow through; and (4) a complete absence of accountability. *Id.* Rouse states that Defendants "have been aware of these deficiencies for at least 5 years and have failed to correct [or] address them despite every one of their job descriptions involving language such as, 'monitors, oversight, and operational control.'" *Id.* These conclusory allegations are insufficient to state a claim. *See Brooks v. Ross,* 578 F. 3d 574, 581 (7th Cir. 2009). Other than identifying the individual professional position held by Defendants, Rouse has not alleged any facts showing personal involvement on the part of each Defendant for the making or implementation of these policies. He also has failed to explain how Dr. Pittman's provision of constitutionally inadequate medical care was a result of these policies. *See Calhoun v. Ramsey,* 408 F.3d 375, 379 (7th Cir. 2005). Furthermore, Rouse cannot hold these Defendants liable based on their supervisory roles. It is well established that supervisory liability or *respondeat superior* liability is not applicable in Section 1983 claims. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 requires proof of individual responsibility. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014). Accordingly, Count 2 will be dismissed.

### DISPOSITION

**IT IS HEREBY ORDERED** that the Complaint survives screening pursuant to Section 1915A. **Count 1** shall proceed against Dr. Pittman. **Count 2** is **DISMISSED without prejudice.** Because there are no further claims against Defendants Jeffries, Williams, Meeks, John/Jane Doe 1, John/Jane Doe 2, Brookhart, John/Jane Doe 3, Cunningham, John/Jane Doe 4, Wexford Health Services, Inc., Dover, Lehman,

John/Jane Doe 5, and John/Jane Doe 6 they are **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to terminate them as parties in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Dr. Pittman the following:   (1) a Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) a Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Rouse. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Rouse, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant Pittman only needs to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Rouse, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Rouse is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:   September 24, 2020.**

Digitally signed
by Judge Sison 2
Date: 2020.09.24
08:45:13 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.