UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. ROUSE, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-00175-GCS |
| | ) |
| LYNN PITTMAN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant Pittman's motion for summary judgment. (Doc. 64, 65).[1] Plaintiff opposes the motion. (Doc. 69). Based on the reason delineated below, the Court **GRANTS** the motion for summary judgment.

Plaintiff William A. Rouse, an inmate currently incarcerated at Taylorville Lawrence Correctional Center ("Taylorville"), alleges that Defendant Pittman was deliberately indifferent to his serious medical need in treating his eye laceration while he was housed at Lawrence Correctional Center ("Lawrence"). He seeks declaratory judgment and monetary damages. Plaintiff makes the following allegations in his complaint:

---

[1] Along with the motion for summary judgment, Defendant Pittman filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to a motion for summary judgment. (Doc. 66).

Rouse alleges that on Friday, March 29, 2019, while playing basketball at Lawrence, he was injured when he "smacked heads with another inmate." (Doc. 1, p. 3). "The impact 'knocked him out on his feet' and opened up a laceration over his left eye." *Id.* He was taken to the health care unit, where a nurse determined that he needed stitches. The nurse left the room to inform the doctor. After Dr. Pittman evaluated the injury, she also determined that Rouse needed stitches but stated, "I'm not doing this today." Defendant Pittman directed the nurse to put a butterfly bandage on the wound and have Rouse come back on Monday. The nurse told Rouse that the butterfly bandages would not work well because he was still sweating, but she went ahead and applied the bandages. Rouse asked the nurse for extra band-aids to take back to the housing unit because the wound continued to bleed. The nurse provided him with extra band-aids and acetaminophen. *Id.* The nurse instructed Rouse to tell a correctional officer if the wound opened back up, if the bleeding did not stop, or if he experienced migraines, vomiting, or dizziness. *Id.* at p. 4.

Rouse returned to the housing unit, and about forty-five minutes later, he informed a sergeant that his wound would not stop bleeding and that he needed to go to the health care unit. (Doc. 1, p. 4). Rouse returned to the health care unit and was evaluated by another nurse who stated that he needed stitches "right now." Rouse was taken to Richland Memorial Hospital. At the hospital, (1) he received a tetanus shot; (2) his vitals were checked; (3) the wound was irrigated and cleaned; (4) epinephrine was administered to stop the bleeding; (5) a concussion protocol was performed; and (6) he received stitches, a compression wrap, and an ice pack. *Id.*

Rouse returned to the housing unit at Lawrence without ice and was not issued an ice permit. (Doc. 1, p. 5). The next day he woke up with a throbbing headache and mild nausea. Throughout the morning, the headache intensified and by the afternoon he was having double-vision and feeling dizzy and nauseated. He informed the sergeant of his symptoms and was taken to the health care unit. Rouse told the nurse that he was experiencing concussion symptoms. To dissuade Rouse from being seen, the nurse told Rouse that they could not do anything for him but that the doctor may place him under observation until Monday. Rouse said "okay," and he was taken to an exam room. *Id.* After a quick examination, the nurse gave Rouse a blister pack of ibuprofen and told him that the doctor scheduled him for a follow-up appointment on Monday morning and that he was to return to the housing unit. *Id.* at p. 6.

On Monday morning, April 1, 2019, during his appointment with Defendant Pittman, she told him "sorry for running out on you on Friday, I had to get my daughter to the airport." Rouse told Defendant Pittman that he had a throbbing headache and nausea, and he requested additional pain medication because he was out of the ibuprofen and acetaminophen he had previously been given. (Doc. 1, p. 6). Defendant Pittman ordered a CT scan and issued a permit for ice. Rouse was not given any pain medication.

From Wednesday until Saturday, Rouse continued to experience mild nausea and headaches. He saw Defendant Pittman on April 8, 2019, to have his stitches removed. He told Defendant Pittman he was still experiencing headaches and nausea and requested pain medication. Defendant Pittman told Rouse she would follow up with the CT results. He continued to have mild headaches and nausea until April 12, 2019. He was never

called back to the health care unit to go over the CT results with Defendant Pittman. (Doc. 1, p. 6).

On September 24, 2020, the Court conducted a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Plaintiff was allowed to proceed with an Eighth Amendment deliberate indifference claim against Dr. Pittman for failing to treat Rouse's head injury timely and adequately. (Doc. 14).

Defendant Pittman maintains that she is entitled to summary judgment as Plaintiff cannot set forth any evidence that she was deliberately indifferent to Plaintiff's serious medical need in treating his eye laceration. Nor can Plaintiff provide any verifiable medical evidence to support a claim that any delay caused him serious harm. Plaintiff counters that the evidence shows that Defendant Pittman was deliberately indifferent to his serious medical needs. Plaintiff asserts that he suffered unnecessary and wanton infliction of pain and suffering due to the delay in treatment, and such pain and suffering could have been avoided had Defendant Pittman provided adequate and timely medical treatment.

## UNDISPUTED FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

During the relevant times alleged in the complaint, Plaintiff was housed in Lawrence.

On March 29, 2019, Plaintiff was playing basketball with other inmates at Lawrence. One of the other inmates ran into Plaintiff, which resulted in a cut above Plaintiff's left eye. On March 29, 2019, Plaintiff was taken to the Health Care Unit for treatment to the cut above his left eye. A nurse applied steri-strips to the cut above Plaintiff's eye.[2]

At approximately 3:45 p.m. on March 29, 2019, a nurse telephoned Defendant Pittman to inform her of the nature of Plaintiff's injuries. At that time, Defendant Pittman ordered Plaintiff to be sent to Carle Richland Memorial Hospital for treatment to the cut above Plaintiff's left eye.

Plaintiff arrived at Richland Memorial Hospital at approximately 4:58 p.m. on March 29, 2019. The provider assessment time at Richland Memorial Hospital was 5:17 p.m. on March 29, 2019. The assessment was positive for a 2-3 cm laceration to Plaintiff's left forehead. Plaintiff received 5 sutures to close the laceration at approximately 5:48 p.m. on March 29, 2019. He was then discharged back to Lawrence in good condition, with a pain scale rating of 1/10. A nurse contacted Defendant Pittman upon Plaintiff's return to Lawrence. Defendant Pittman ordered Plaintiff to be seen on the M.D. sick call line on Monday (4/1/2019) for follow-up.

On April 1, 2019, Plaintiff saw Defendant Pittman and she noted that no imaging was done while Plaintiff was at Richland Memorial Hospital. She also noted that there

---

[2] Plaintiff alleges that he saw Defendant Pittman in health care at 2:30 p.m. on March 29, 2019 and that Defendant Pittman saw him, stated that he was okay, stated that she did not have time to treat him, and ordered the nurse to put a butterfly bandage on his eye.

was some orbital swelling, but that Plaintiff's sutures were intact. However, because Plaintiff displayed potential signs of concussion, Defendant Pittman put him in for an urgent collegial request for a CT head scan. Defendant Pittman also issued Plaintiff a medical permit for ice packs to start on April 1, 2019 and run through April 3, 2019.

The CT Scan was approved in Collegial Review on April 2, 2019. The CT Scan was performed at Lawrence County Memorial Hospital on April 4, 2019. The imaging results showed no hemorrhage, edema, or mass effect to Plaintiff's brain; there was also no recent infarction and normal white matter. The radiologist noted that there were no acute intracranial findings and no other significant abnormalities.

Plaintiff was next seen by Defendant Pittman on April 8, 2019. Defendant Pittman noted that Plaintiff's headache and dizziness were improving. Defendant Pittman removed the sutures without complication or blood loss. Plaintiff did not re-present to Defendant Pittman or to anyone with the healthcare unit staff regarding the cut on his forehead, nor with respect to any pain related thereto.

Plaintiff has no medical education or training other than basic first aid and CPR. Plaintiff is also not a nurse or health care provider.

**LEGAL STANDARDS**

A.   **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV.

PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

**B.      Deliberate Indifference**

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–653 (7th Cir. 2005)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)(stating that "deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail on such a claim, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *See Arnett*, 658 F.3d at 750; *accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citation omitted). Also, "mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotations and citations omitted).

## ANALYSIS

For the purposes of this motion and based on the record before the Court, the Court finds that the injury to Plaintiff's eye constitutes an objectively serious medical need. However, based on that same record and construing the evidence in the light most favorable to Plaintiff, the Court finds that there is no evidence in the record to show that Defendant Pittman was deliberately indifferent to Plaintiff's serious medical need regarding his eye laceration.

At his initial visit to health care after the injury, Plaintiff wanted sutures. Defendant Pittman did not provide the requested sutures at that time because of a personal commitment. Plaintiff, however, ultimately received the sutures he had requested later that day after it became clear that initial efforts to control the bleeding were not successful. The medical treatment simply was not the treatment Plaintiff wanted and/or demanded at that specific time.

Nevertheless, the record reveals that Defendant Pittman provided appropriate and continued medical treatment to Plaintiff for his eye laceration. Plaintiff received the following regarding his eye laceration:

- Steri-strips for his eye;
- Blister pack of ibuprofen;
- Order to be sent to emergency room for sutures on March 29, 2019;
- Urgent collegial referral for CT scan on April 1, 2019;
- Permits for ice packs on April 1, 2019; and
- Removal of the sutures on April 8, 2019.

The record demonstrates that Defendant Pittman was called by a nurse at approximately 3:45 p.m. on March 29, 2019, when she ordered Plaintiff to be sent to an

outside emergency department for treatment to the cut on Plaintiff's forehead. The record also reflects that Plaintiff received sutures to the cut on his forehead at Richland Memorial Hospital around 5:48 p.m. only a short time after his injury that same day. Upon his return to Lawrence from Richland Memorial Hospital, Defendant Pittman was notified and informed the nurse to put Plaintiff on the sick call line to see her on Monday, April 1, 2019. On April 1, 2019, Defendant Pittman saw Plaintiff in health care and ordered ice pack permits for Plaintiff and an urgent CT scan. Subsequently, Defendant Pittman removed the sutures on April 8, 2019. Even construing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude that Defendant Pittman was deliberately indifferent to Plaintiff's serious medical needs regarding his eye.

Additionally, there is no evidence in the record, medical or otherwise, that the relatively short delay Plaintiff experienced before receiving the sutures caused him any additional harm or exacerbated his injuries. Moreover, Plaintiff has testified that the treatment he received at Richland was adequate. (Rouse Depo, p. 58-59). Finally, the CT scan showed no intracranial abnormalities, no distinct mass, edema, or swelling of the brain. Plaintiff has failed to produce any evidence that could allow a reasonable jury to find in his favor.

## CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment (Doc. 64). The Court **FINDS** in favor of Lynn Pittman and against William A. Rouse, II, on Count 1 of the Complaint. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED**.

**DATED: June 15, 2022.**

Digitally signed by
Judge Sison 2
Date: 2022.06.15
14:57:42 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**